IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STACY ORLANDO JACKSON                                                                    PLAINTIFF

v.                      Civil No.  5:13-cv-05221-PKH-MEF

DETECTIVE R. KNOTTS                                                                      DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed by the Plaintiff, Stacy Orlando Jackson, pursuant to the provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.

Plaintiff maintains he was falsely arrested on August 13, 2013, during a traffic stop.  He maintains he was falsely imprisoned, racially profiled, and defamed.

Defendant filed a Motion for Summary Judgment (Doc. 35) on September 16, 2015.  On March 17, 2016, a hearing was held to allow Plaintiff to testify in response to the Motion.  Following the hearing, this matter was taken under advisement pending preparation of this report and recommendation.

**I.  BACKGROUND**

On January 13, 2013, Luis Gomez was robbed by two individuals - a black male and a white male.  During the robbery a weapon was held to Gomez's head or throat.  Gomez's wallet was taken.

The robbery was reported to the Fayetteville Police Department on January 14, 2013.  The robbery occurred at the Chestnut Apartments.  Corporal Thomas Reed and Corporal Julia McKinney were dispatched to the Chestnut Apartments.  *Deft's Ex.* B at ¶ 3; *Deft's Ex.* D at ¶ 4.  Gomez reported that he had been robbed the night before in front of apartment B2.  *Id.*  Gomez lived in apartment B1.  *Id.*  Gomez indicated that he had been too scared to call in the robbery the night

before.

On January 13, 2013, at approximately 9:40 p.m., Gomez looked out his apartment window and saw a black male standing next to his truck and a white male trying to force open the door of the truck. *Deft's Ex.* A at ¶ 2; *Deft's Ex.* B at ¶ 3. Gomez stated he recognized the two men as his next door neighbors. *Id.* Gomez went outside and asked the men what they were doing. *Id.* The black male came up behind Gomez and put a black hatchet style knife to his throat and started going through Gomez's pockets. *Id.* The white male went inside apartment B2 and got a black aluminum baseball bat and put the bat behind Gomez's head and pushed it forward and down while the black male took the wallet out of Gomez's back pocket. *Id.* The wallet contained $250 in cash, among other things. The black male and white male then walked into apartment B2. Gomez indicated the black male was wearing a black jacket. *Deft's Ex.* A at ¶ 2. Gomez identified the Plaintiff in a photo lineup as the black male who participated in the robbery and who lived in apartment B2. *Deft's Ex.* A at ¶¶ 2-3; *Deft's Ex.* B at ¶ 3.

Later that day, Detective Knotts and Detective Shawn Allen went to Chestnut Apartments to contact the occupants of apartment B2. *Deft's Ex.* A at ¶ 4; *Deft's Ex.* C at ¶ 2. No one was home but as they were leaving, Dustin Faust arrived. *Id.* Faust said apartment B2 was leased to him and his father. *Id.* Faust indicated that another man named Dustin might be inside the apartment. *Id.* Faust agreed to allow Detectives Knotts and Allen inside the apartment to locate the other Dustin. *Id.*

While inside the apartment, Detective Knotts found a black aluminum baseball bat in the living room. *Deft's Ex.* A at ¶ 4; *Deft's Ex.* C at ¶ 2. Faust signed a consent to search form. *Id.* Detective Knotts found a duffle bag in the living room with prescriptions for Stacy Jackson. *Id.* The

detectives also located a black jacket with a hood in a kitchen cabinet. *Id.* Detective Knotts located a canvas hatchet cover with the word "Fusion" by SOG on it. *Id.* Faust denied knowing Stacy Jackson and stated that he did not know who the baseball bat or the hatchet cover belonged to. *Id.*

On January 15, 2013, Detective Knotts talked to Thomas Benardski. *Deft's Ex.* A at ¶ 5. Benardski stated that Stacy Jackson had been staying at apartment B2. *Id.* Benardski further stated that he had given a black SOG hatchet to Faust. *Id.*

Later that day, the detectives interviewed Faust again. *Deft's Ex.* A at ¶ 6. Faust again stated he did not know Stacy Jackson but admitted he acquired the black baseball bat after being robbed a few months earlier. *Id.*

On January 16, 2013, Detective Knotts met again with Benardski. *Deft's Ex.* A at ¶ 7. Benardski stated that Plaintiff and Faust were friends and that Plaintiff had been coming and going from apartment B2 for months. *Id.*

On January 17, 2013, Gomez identified Faust from a photo lineup as one of the individuals who robbed him. *Deft's Ex.* A at ¶ 8. Gomez further stated that Faust lived in apartment B2. *Id.*

On January 18, 2013, Detective Knotts contacted Faust again and recorded the conversation on a mobile video recorder. *Deft's Ex.* A at ¶ 9. Faust admitted he had withheld information and that Plaintiff had been staying with him for approximately six months. *Id.* Faust admitted there had been a confrontation with Gomez because Faust suspected Gomez had stolen an X-box from Faust's apartment. *Id.* Faust said that he had been armed with the baseball bat and Plaintiff had the hatchet. *Id.* They knocked on Gomez's door and asked if they could search the apartment fo the X-box. *Id.* Faust said they did not find the X-box, and he and Plaintiff left the apartment. *Id.* Faust said Gomez stated that he wanted his wallet back. *Id.* Plaintiff emptied his pockets to show that he did not have

the wallet. *Id.*

Later that day, Detective Knotts conducted another interview with Gomez. *Deft's Ex.* A at ¶ 10; *Deft's Ex.* B at ¶ 4. Gomez denied that anyone contacted him at his front door, that he allowed anyone into his apartment, or that he was aware Faust was missing an X-box. *Id.*

On January 21, 2013, Detectives Knotts and Allen arrested Faust for aggravated robbery and transported him to the Fayetteville Police Department. *Deft's Ex.* A at ¶ 11; *Deft's Ex.* C at ¶ 3. After being read his *Miranda*[1] rights, Faust agreed to speak. Faust said he believed Gomez had stolen the x-box because he had been casing the apartment for sometime. *Id.* Faust changed his story and said that when they entered the apartment, he was armed with the hatchet and Plaintiff had the baseball bat. *Id.* Faust was "adamant that nothing was taken from Gomez, but he said it was possible" Plaintiff had taken something from Gomez. *Id.*

Later that day, Breann Hollinghead came to the police station to inquire about Faust's arrest. *Deft's Ex.* A at ¶ 12. She stated Faust told her that he and Plaintiff had gone into Gomez's apartment and that Plaintiff had "patted Gomez down."

Attempts to locate Plaintiff during the investigation were unsuccessful. *Deft's Ex.* A at ¶ 12. An arrest warrant was issued charging the Plaintiff with aggravated robbery under Ark. Code Ann. § 5-12-103. *Id.* at ¶ 14. According to Detective Knotts, Plaintiff "committed the theft when he took Gomez's wallet and he was threatening to employ physical force with a deadly weapon by holding either the baseball bat or the hatchet to Gomez's head or throat during the theft." *Id.*

Detective Knotts talked to Plaintiff's probation officer in an attempt to locate the Plaintiff. *Deft's Ex.* A at ¶ 15. Detective Knotts told the probation officer the allegations that had been made

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

by Gomez. *Id.* Including Gomez's statement that the Plaintiff held a hatchet to his neck.

Plaintiff testified that Detective Knotts left out vital information about the robbery when speaking with Plaintiff's probation officer. Plaintiff maintains that Detective Knotts knew that the Plaintiff did not rob Gomez with a hatchet. Plaintiff points out that during one conversation Detective Knotts had with Faust, Faust admitted he was the one who held the hatchet. Plaintiff testified that Faust is the white male who was involved in the robbery but that he is not the black male who was involved. Plaintiff argues that racial profiling is the only reason that Detective Knotts charged him with aggravated robbery despite knowing it was Faust who used the hatchet. Plaintiff points out that the hatchet was never recovered. He also states that there was no finger print evidence.

In Plaintiff's mind, the hatchet is the "main thing." Since he didn't have the hatchet, Plaintiff states no criminal claim existed against him. Plaintiff failed to turn himself in and was arrested during a traffic stop in Russellville on August 13, 2013. *Id.*

During his deposition, Plaintiff testified that he randomly went down to Russellville in late January, 2013. He noted that when he left Fayetteville, he was not charged with aggravated robbery.

Plaintiff admitted he lived in apartment B2 with Faust, another man named Dustin, and Benardski for about six months but said he moved out of the apartment around the end of December, 2012. Faust indicated that Plaintiff had been living with him at the time of the incident.

On January 28, 2013, Detective Knotts contacted Plaintiff's probation officer and reported that Plaintiff "had committed an aggravated robbery." Detective Knotts is alleged to have further reported that Plaintiff had "held a hatchet to a man's neck during a robbery." *Id.* at pg. 4. Plaintiff alleges that Detective Knotts was aware of the fact that a co-defendant had denied that Plaintiff was

in possession of a hatchet during the alleged burglary. *Id.* Further, Plaintiff alleges that after a thorough investigation all charges against him were nolle prossed. *Id.* By the time the charges were nolle prossed, Plaintiff's probation had been revoked. *Id.* Plaintiff maintains Detective Knotts violated his constitutional rights, defamed him, and caused him to be falsely arrested and imprisoned.

After his arrest on one count of aggravated robbery, Plaintiff was incarcerated in the Washington County Detention Center. (Doc. 21 at pg. 5). He was also incarcerated on a petition to revoke his probation. *Id.* at pg. 10. Plaintiff maintains he was falsely imprisoned.

## II.  APPLICABLE STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.*, 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that

version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  DISCUSSION

Defendant contends he is entitled to summary judgment on the following grounds: (1) there is no evidence of racial profiling; (2) there was probable cause for the issuance of the warrant; (3) defamation is not actionable under § 1983 and Plaintiff failed to present sufficient evidence to support such a claim under Arkansas law; and, (4) Defendant is entitled to qualified immunity.

**1.  Racial Profiling**

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. "The Equal Protection Clause requires the government to treat similarly situated persons similarly, and dissimilar treatment of those not similarly situated does not result in an equal protection violation." *Ricketts v. City of Columbia, Missouri*, 36 F.3d 775, 781 n. 2 (8th Cir. 1994).

Selective enforcement on the basis of race, i.e., *racial profiling*, violates the Equal Protection Clause. *Whren v. United States*, 517 U.S. 806, 813 (1996). "The Supreme Court has explained that a claimant alleging selective enforcement of facially neutral criminal laws must demonstrate that the challenged law enforcement practice 'had a discriminatory effect and that it was motivated by discriminatory purpose.'" *Giron v. City of Alexander*, 693 F. Supp. 2d 904, 937 (E.D. Ark. 2010) (*quoting Wayte v. United States*, 470 U.S. 598, 608 (1985)).

In this case, the facts belie any suggestion of racial profiling.  Arrest warrants were obtained for both Faust (White) and the Plaintiff (Black).  Both were charged with aggravated robbery. Whether Plaintiff held the hatchet or the baseball bat, he was correctly charged with aggravated

robbery.  There was no racial profiling involved in the application of the law in this instance.  No other evidence of racial profiling has been presented.

### 2. Probable Cause for Arrest

"Probable cause exists if the totality of the facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense." *Flynn v. Brown*, 395 F.3d 842, 844 (8th Cir. 2005) (internal quotation marks and citations omitted). "[D]etermining if probable cause exists is not an exact science."  *Brodnicki v. City of Omaha*, 73 F.3d 1261, 1265 (8th Cir. 1996).

Robbery is defined in Ark. Code Ann. § 5-12-102 (2016).  Section 5-12-102(a) provides: "[a] person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person."  In Ark. Code. Ann. 5-12-103(a)(2016), it states that "[a] person commits aggravated robbery if he or she commits robbery as defined in § 5-12-102, and the person: (1) is armed with a deadly weapon."

Given the victim's identification of Faust and the Plaintiff, the victim's statement regarding the use of the hatchet and bat, the fact that the bat and what appeared to be the case for the hatchet were found in the apartment being lived in by Faust and the Plaintiff, and Faust's account of the incident, there clearly existed probable cause of the issuance of the arrest warrant.

### 3. Defamation

The claim for defamation under § 1983 was previously dismissed.  To the extent the Complaint can to be read to be asserting a state law defamation claim, the Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367.  No federal claims remain.

**4. Qualified Immunity**

Having found that the facts do not make out a constitutional violation, Defendant is entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### IV.  CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment (Doc. 35) be **GRANTED and ALL FEDERAL LAW CLAIMS BE DISMISSED WITH PREJUDICE.**  I further recommend that the Court decline to retain supplemental jurisdiction over the state law defamation claim.  28 U.S.C. § 1367.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 19th day of July, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE